IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL NO. 5:12CV188-RLV-DSC

| | |
|---|---|
| ALEX LEE, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PERFORMANCE FOOD )<br>GROUP, INC, )<br>)<br>Defendant. )<br>_____) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Plaintiff's "Petition to Enforce Arbitration Agreement" (document #1) filed November 30, 2012, and "Motion to Compel Arbitration of Counterclaims, Alternative Motion to Strike, and Second Alternative Motion to Stay Litigation Pending Arbitration" (document #16) filed February 22, 2013, and the parties' associated briefs and exhibits. See documents ## 1, 9, and 15 – 19.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the Motions are ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the Court **GRANTS** the "Petition to Enforce Arbitration Agreement" and "Motion to Compel Arbitration of Counterclaims …" and **STAYS** this matter pending the outcome of that proceeding, as discussed below.

**I. PROCEDURAL AND FACTUAL BACKGROUND**

On May 29, 2012, Plaintiff Alex Lee, Inc. entered into an agreement with Defendant

1

Performance Food Group, Inc. in which Lee agreed to sell all of the issued and outstanding stock in its subsidiary Institution Food House, Inc. ("the Company") to Performance Food Group in accordance with a Stock Purchase Agreement ("the Agreement"). The parties agreed to a base purchase price of $182,300,000 that Performance paid to Lee at closing on June 23, 2012.

The parties also agreed that the base purchase price would be adjusted by the addition and subtraction of defined assets and liabilities of the Company. Since those amounts could not be determined by the closing date, the Agreement provided that the parties would make the adjustments at a later time. The Agreement called for the adjustments to be determined within sixty (60) days of closing. Plaintiff agreed to pay Defendant the adjusted amount if the defined term Estimated Cash Payment was higher than the defined term Cash Payment. Conversely, Defendant agreed to pay Plaintiff the adjusted amount if the defined term Estimated Cash Payment was lower than the defined term Cash Payment.

Pursuant to Section 2.5 of the Agreement, Performance had sixty (60) days to provide Lee with its detailed calculation of the adjusted price. On or about August 21, 2012, Performance sent Lee a letter stating that it owed Lee an adjusted amount of $1,232,092.96. Performance paid that additional amount to Lee.

On August 29, 2012, Lee responded with an objection letter pursuant to Section 2.5(c) of the Agreement disputing Performance's calculation. Lee contends that it was entitled to an adjusted payment of $4,244,735.80.

The Agreement provides that if Lee objects to Performance's calculation of the adjusted payment and the parties are unable to resolve the dispute, then the matter will be submitted to an independent auditor for "final and binding" determination. The relevant provision states:

> If the Closing Statement Recipient delivers an Objections Statement within such 30 day period, then the Seller and the Buyer will use commercially reasonable efforts to resolve any such disputes, but, if a final resolution is not obtained within 30 days after the Closing Statement Recipient has submitted the Objections Statement, <u>any remaining matters that are in dispute will be resolved by the Independent Auditor</u>. The Independent Auditor will prepare and deliver a written report to the Buyer and the Seller and will submit a proposed resolution of such unresolved disputes promptly, but in any event within 30 days after the dispute is submitted to the Independent Auditor. . . . The Independent Auditor's determination of such unresolved disputes <u>will be final and binding upon all parties</u>; provided, however, that no such determination shall be any more favorable to the Closing Statement Preparer than is set forth in the Closing Statement or any more favorable to the Closing Statement Recipient than is proposed in the Objections Statement.

Exhibit A to Document #1, § 2.5(c) (emphasis added).

Although the Agreement does not use the term "arbitration," the parties concede that this is an arbitration clause. However, they dispute the scope of this provision.

After Performance refused to submit the dispute to arbitration, Lee filed its Petition to Enforce Arbitration Agreement (document #1) on November 30, 2012.

On January 11, 2013, Performance filed its "Response to Petition …" (document #9) including what it contends are separate counterclaims for indemnification and declaratory judgment. Performance contends that prior to closing, Lee overestimated the Company's indebtedness in the amount $3,012,643.74. Performance agrees that but for this overstatement of the Company's indebtedness, the adjusted payment it owed Lee would be $4,244,735.80. See Document #9 at 14.

On February 22, 2013, Lee filed its "Motion to Compel Arbitration of Counterclaims, Alternative Motion to Strike [the Counterclaims], and Second Alternative Motion to Stay Litigation Pending Arbitration" (document #16). Lee contends that the parties' entire dispute relates to the adjusted amount and therefore falls within the scope of the arbitration provision in

3

Section 2.5(c) of the Agreement.  Performance responds that the parties agree on the adjusted amount of $4,244,735.80, but that its counterclaims seek a separate set-off of $3,012,643.74 which falls outside the scope of the arbitration clause.

Plaintiff's Petition and Motions have been fully briefed and are, therefore, ripe for determination.

## II. DISCUSSION OF CLAIMS

The Federal Arbitration Act ("FAA") establishes a federal policy favoring the enforcement of written agreements to arbitrate.  Specifically, the FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA requires courts to stay the proceeding and compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate.  9 U.S.C. § 3.  The court must compel arbitration even if the disputed claims are exempted from arbitration or otherwise considered non-arbitrable under state law.  Perry v. Thomas, 482 U.S. 483, 489 (1987) (state statute that required litigants to be provided a judicial forum for resolving wage disputes "must give way" to Congress' intent to provide for enforcement of arbitration agreements); Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 90 (4th Cir. 2005) (FAA preempts state law barring arbitration of certain claims).

The Supreme Court has held that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).  "Pursuant to that liberal policy, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

4

construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. " Moses H. Cone, 460 U.S. at 24-25; see also Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 710 (4th Cir. 2001); Long v. Silver, 248 F.3d 309, 315-16 (4th Cir. 2001); O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273-74 (4th Cir. 1997).

The Fourth Circuit has stated that

> [T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration. Thus, we may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

Long, 248 F.3d at 315-16 (internal citations omitted).

On the other hand, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). See also AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648 (1986); Johnson v. Circuit City Stores, Inc., 148 F.3d 373, 377 (4th Cir. 1998); Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997).

Performance relies on an unpublished decision from the Fourth Circuit where the Court held that a dispute over an indemnification offset was outside the scope of a narrow arbitration clause referring "any remaining objections" to an independent auditor. New River Mgmt. Co., L.L.C. v. Henry Schein Inc., 9 F. App'x 232, 234-35 (4th Cir. 2001).

The Court finds that New River is inapposite here. Performance bases its indemnity claim on Section 10.2(d) of the Stock Purchase Agreement. That section specifically limits indemnification to an "Indebtedness Amount" that "has not been taken into account in the Closing Statement as finally determined in accordance with Section 2.5." (Document #1, Exhibit

5

A, § 10.2(d)).  Any dispute regarding the amount in the Closing Statement is "finally determined" pursuant to Section 2.5 through the process described above that culminates in "any remaining matters that are in dispute … be[ing] resolved by the Independent Auditor."  (Id., § 2.5(c)).

The Court finds the rationale in Severstal U.S. Holdings, LLC v. R.G. Steel, LLC, 865 F. Supp. 2d 430, 433 (S.D.N.Y. 2012) to be persuasive.  In that case, two sophisticated parties entered into a stock purchase agreement similar to the one at issue here.  The parties agreed that the estimated initial purchase price was to be adjusted by the final net working capital and the final indebtedness.  Id. at 433-34.  The parties were unable to resolve their dispute and the buyer informed the seller of its intention to proceed to arbitration.  The seller objected, contending that "a number of the remaining Contested Adjustments are not arbitrable, and must be pursued under the exclusive remedy of indemnity in court."  Id. at 437.

The District Court ruled against the seller, finding all of the disputed adjustments to be arbitrable.  Id. at 439.  The Court concluded that if a dispute involving the agreed-upon calculation methodology was not arbitrable, the arbitration provision "would be reduced to resolving arithmetic errors, at most."  Id. at 441.  Furthermore, the indemnification provision in that case did not apply to the extent that losses were included in the parties' calculation/arbitration section, which is the equivalent to Section 2.5(c) here.  Id. at 443. Consequently, the Court held that "[b]ecause the [stock purchase agreement] does not direct how such a dual-natured claim must be asserted, the presumption is for arbitrability."  Id. at 443-44 ("existence of competing interpretations of an agreement containing an arbitration provision is not a sufficient basis to overcome the presumption of arbitrability").

In applying the federal policy favoring arbitration, this Court concludes that all of the disputes between Lee and Performance are within the scope of the arbitration clause. Although the Court has the discretion to dismiss an action where all the issues raised are arbitrable, the more common practice is to stay the action or those claims pending the outcome of the arbitration in order to provide a convenient forum for confirmation of any ensuing arbitration award. See 9 U.S.C. § 3 ("a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration...."); 9 U.S.C. § 9 ("any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated").

Accordingly, the Court **GRANTS** Plaintiff's Petition and Motion to Compel Arbitration and **STAYS** this action pending arbitration.

### III. ORDER

**IT IS HEREBY ORDERED** that**:**

1. Petitioner's "Petition to Enforce Arbitration Agreement" (document #1) and "Motion to Compel Arbitration of Counterclaims …" (document #16) are **GRANTED**, that is, the parties are **ORDERED** to submit their dispute to binding arbitration pursuant to the provisions of their Agreement.

2. Petitioner's "… Alternative Motion to Strike ..." (document #16) is **DENIED AS MOOT**.

3. Petitioner's "… Second Alternative Motion to Stay Litigation Pending Arbitration" (document #16) is **GRANTED** and this matter is **STAYED** pending the outcome of the arbitration. Within thirty (30) days of the issuance of any arbitration award or other resolution of

that proceeding, the parties' counsel, jointly or severally, shall report the results to the Court.

    2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; and to the Honorable Richard L. Voorhees.

**SO ORDERED.**

Signed: April 1, 2013

David S. Cayer
United States Magistrate Judge